## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Aileen Goldstein, individually and on behalf of all others similarly situated, | Case No. 1:22-cv-00088 |
| *Plaintiff*, | **JURY TRIAL DEMANDED** |
| v. | |
| Walmart, Inc. | |
| *Defendant*. | |

## Class Action Complaint

**Table of Contents**

I.      Introduction...................................................................................................... 1

II.     Parties.............................................................................................................. 1

III.    Jurisdiction and Venue...................................................................................... 2

IV.     Facts. .............................................................................................................. 2

        A.      Defendant makes, markets, and sells Equate products prominently  labeled "Non-Drowsy." ....................................................................................... 2

        B.      The Non-Drowsy Equate Products cause drowsiness............................. 6

        C.      Defendant's Non-Drowsy representations are misleading. ..................... 7

        D.      Plaintiff was misled by Defendant's misrepresentations ...................... 10

        E.      Class Action Allegations..................................................................... 10

V.      Claims ........................................................................................................... 12

VI.     Jury Demand. ................................................................................................. 18

VII.    Prayer for Relief............................................................................................. 18

I.      **Introduction.**

1.      Defendant Walmart makes, sells, and markets "Equate" over-the-counter cough medicine, including Equate versions of brands like Robitussin and DayQuil.  Like the branded versions, many of these medicines contain the active ingredient Dextromethorphan Hydrobromide ("DXM").  Many such Walmart products state prominently on the front of their label that they are "Non-Drowsy." [1]

2.      By prominently labeling these products as "Non-Drowsy," Defendant led Plaintiff and other consumers to believe that the Non-Drowsy Equate Products do not cause drowsiness, and that drowsiness is not a side effect of those products.  But the truth is that products containing DXM—and thus the Non-Drowsy Equate Products—do cause drowsiness, and that drowsiness is a known side-effect of DXM.

3.      In this way, Defendant misled Plaintiff and other reasonable consumers about the effects of the Non-Drowsy Equate Products.

4.      Defendant's misrepresentations allowed Defendant to overcharge Plaintiff and other consumers like her.

II.     **Parties.**

5.      Plaintiff Aileen Goldstein is a citizen of New York (domiciled in New York, New York).  The proposed class includes citizens of numerous states.

6.      Defendant Walmart, Inc. is a citizen of Delaware and Arkansas.  Its principal place of business is at 702 S.W. 8th Street, Bentonville, Arkansas 72716.  It is a Delaware corporation.

---

[1] Throughout this Complaint, Equate products containing DXM that state on their label that they are "Non-Drowsy" are called "Non-Drowsy Equate Products."

## III.   Jurisdiction and Venue.

7.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2).  The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from the Defendant.

8.      Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendant would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendant sold the Non-Drowsy Equate Products to consumers in this District, including Plaintiff.  Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including selling Non-Drowsy Equate Products to Plaintiff.

## IV.   Facts.

### A.     Defendant makes, markets, and sells Equate products prominently labeled "Non-Drowsy."

9.      Walmart manufactures, distributes, markets, and sells the Non-Drowsy Equate Products.

10.     The front label of each Non-Drowsy Equate Product prominently states that the product is "Non-Drowsy."  For example:

**Adult Tussin DM Cough Syrup**



**Adult Daytime Severe Cold & Flu**



**Daytime Tussin DM Max**



11.     These representations are materially the same across all Non-Drowsy Equate Products.

12.     The Non-Drowsy Equate Products do not disclose anywhere on their packaging that they do or can cause drowsiness, or that drowsiness is a side effect of the Non-Drowsy Equate Products.

13.     Based on the prominent "Non-Drowsy" label included on the face of each product, a reasonable consumer would believe that the products do not cause drowsiness.  That is, a reasonable consumer would believe that drowsiness is *not* a side-effect of the product.

14.     Indeed, Defendant labeled the products this way because it intended consumers to rely on the labels and to believe that the products would not cause drowsiness, so that consumers would buy more products or pay more for them.

**B.     The Non-Drowsy Equate Products cause drowsiness.**

15.     In truth, products containing DXM—like the Non-Drowsy Equate Products—do cause drowsiness, and drowsiness is a documented side effect of DXM. [2]

16.     In fact, drowsiness is a common side effect at the recommended dosages.  For example, one study found that "[s]omnolence is a common side effect of centrally acting antitussive drugs" like dextromethorphan, and that 10.4% of users of products containing dextromethorphan develop drowsiness within three days of starting treatment with DXM cough medicine. [3,4]  The "cases of intense somnolence" were "related only to dextromethorphan" and not to the other drug studied.  And patients in this clinical study were given an even smaller dosage of DXM (15 mg three times a day) than the recommended dose found in many Equate products. [5]

---

[2] Dextromethorphan: MedlinePlus Drug Information, NIH National Library of Medicine, https://medlineplus.gov/druginfo/meds/a682492.html (listing drowsiness as a side effect)

[3] E. Catena and L. Daffonchio, "Efficacy and Tolerability of Levodropropizine in Adult Patients with Non-productive Cough, Comparison with Dextromethorphan," 10 Pulmonary Pharmacology & Therapeutics 89-96 (1997).

[4]  The study reports this side effect as "somnolence."  Somnolence means "the quality or state of being drowsy."  Merriam Webster Dictionary, https://www.merriam-webster.com/dictionary/somnolence

[5] For example, Equate Daytime Tussin DM Max contains 20 mg of DXM per 20 ml of syrup and the recommended dosage is 20 ml orally every 4 hours.  https://www.walmart.com/ip/Equate-Non-Drowsy-Maximum-Strength-Daytime-Tussin-DM-Max-Liquid-Ages-12-8-fl-Oz/658559084

17.     The FDA's adverse event report database confirms that "sedation" is one of the most frequently-cited side effects of dextromethorphan-containing products. [6]

18.     For this reason, the Federal Aviation Administration prohibits pilots from flying after ingesting DXM: [7]

| | Cough/cold products | Coricidin (allowed if no chlorpheniramine)<br><br>guaifenesin (found in Mucinex and Robitussin)<br>Mucinex fast-max severe congestion and cough (liquid)<br><br>Identify combo vs isolated | dextromethorphan (Delsym)<br><br>Dayquil (contains dextromethorphan)<br><br>Most "night-time" or "PM" medications contain a sedating antihistamine:<br>- Coricidin HBP cough & cold (contains chlorpheniramine)<br>- Nyquil (contains doxylamine) | Most cough medications are safe for flight, but caution for combination products with sedating antihistamines. **If the label states PM (for nighttime use) or DM (containing dextromethorphan), you should not fly for at least 5 half-lives** after the last dose (see above). |
|---|---|---|---|---|
| **Cough** | | | | |

## C.      Defendant's Non-Drowsy representations are misleading.

19.     The Food and Drug Administration prohibits drug labeling that is "false or misleading."  21 C.F.R. § 201.6.   It is misleading to label a product "Non-Drowsy" when it does cause drowsiness, or if drowsiness is a known side effect of one of its active ingredients.

20.     Based on the fact that Defendant labels the Non-Drowsy Equate Products as "Non-Drowsy," a reasonable consumer would expect that those products do not cause drowsiness.  Similarly, a reasonable consumer would expect that drowsiness is not a side effect of the products.  Indeed, according to Consumer Reports, "'Non-drowsy' is code for antihistamines and other medications that don't make you sleepy." [8]  This is the plain meaning of

---

[6] Even "minimal" sedation is associated with drowsiness.  *See* https://www.medicinenet.com/sedation_vs_general_anesthesia/article.htm
[7] https://www.faa.gov/licenses_certificates/medical_certification/media/OTCMedicationsforPilots.pdf
[8] "How to read over the counter (OTC) drug labels," Consumer Reports, https://www.consumerreports.org/cro/2014/04/how-to-read-over-the-counter-drug-labels/index.htm

"non-drowsy," which means "not causing or accompanied by drowsiness." [9]

     21.    Equate's labeling does not contain any language that a reasonable consumer would understand to qualify these representations, or that would otherwise put a reasonable consumer on notice of the fact that the Non-Drowsy Equate Products actually cause drowsiness.

     22.    Unlike Defendant, some other drug makers do not falsely claim that DXM-products are non-drowsy.  For example, DXM is an active ingredient in Mucinex DM, sold by Reckitt.  But the Mucinex label does not claim that Mucinex DM is non-drowsy, because this is not the truth:



     23.    Defendant could have simply omitted the false and misleading statement, "Non-Drowsy," from its products.

---

[9] https://www.merriam-webster.com/medical/nondrowsy

24.     Or, if Defendant wanted to say something to indicate that a Non-Drowsy Equate Product might cause *less* drowsiness than another Equate product, they could have made a truthful statement to this effect, as other drug makers do.

25.     For example, Dramamine contains an active ingredient that causes drowsiness, Dimenhydrinate.  Dramamine also sells a "less drowsy" version that contains a different active ingredient, Meclizine, which causes less drowsiness.  The front label of Dramamine Less Drowsy prominently displays that it is "less drowsy":



26.     Whether or not an over-the-counter drug causes drowsiness is material to a reasonable customer.  In certain situations, consumers prefer over-the-counter drugs that will not make them drowsy to products that may make them drowsy.  For example, all else equal, a reasonable consumer would prefer to take a drug that does not cause drowsiness to one that does cause drowsiness during the day (or any periods of time when they plan to be awake).  As a second example, if a consumer is planning to engage in activities that require them to be alert (like work), or during which they would prefer to be alert, that consumer would prefer to take a

drug that does not cause drowsiness to one that does.  Indeed, in many situations, taking a drug that does or can cause drowsiness can be dangerous.  For example, taking a drug that causes drowsiness while driving is dangerous.

**D.    Plaintiff was misled by Defendant's misrepresentations**

27.    In or around March 2021, Ms. Goldstein bought a bottle of Equate Daytime Tussin DM Max from a Walmart store in Monticello, New York.  The package said "Non-Drowsy" prominently on the label, and Plaintiff read and relied on this statement when purchasing the product.  But when Plaintiff took the medication, she became unexpectedly drowsy.  Plaintiff would not have bought this product had she known that the product did, in fact, cause drowsiness, and that drowsiness was a known side-effect of the product.

28.    Plaintiff would purchase Non-Drowsy Equate Products again if they were actually "Non-Drowsy" (i.e., if the product was sold as advertised).  Plaintiff, however, faces an imminent threat of harm because she will not be able to rely on the labels in the future, and thus will not be able to purchase the products.

**E.    Class Action Allegations.**

29.    Plaintiff brings certain claims on behalf of the proposed class of: all persons who purchased a Non-Drowsy Equate Product in the United States during the applicable statute of limitations (the "**Nationwide Class**").

30.    For certain claims, Plaintiff brings those claims on behalf of a subclass of consumers who live in certain identified states (the "**Consumer Protection Subclass**").

31.    For certain claims, Plaintiff brings those claims on behalf of a subclass of consumers who, like Plaintiff, purchased Non-Drowsy Equate Products in New York (the "**New York Subclass**").

32.    The following people are excluded from the Class and the Subclasses: (1) any

Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

*Numerosity*

33.     The proposed class contains members so numerous that separate joinder of each member of the class is impractical.  Based on the pervasive distribution of Non-Drowsy Equate Products, there are millions of proposed class members.

*Commonality*

34.     There are questions of law and fact common to the proposed class.  Common questions of law and fact include, without limitation:

- Whether the Non-Drowsy Equate Products cause drowsiness;

- Whether Defendant's labelling of the Non-Drowsy Equate Products as "Non-Drowsy" is deceptive and misleading;

- Whether Defendant violated state consumer protection statutes;

- Whether Defendant committed a breach of express warranty; and,

- Damages needed to reasonably compensate Plaintiff and the proposed class.

*Typicality*

35.     Plaintiff's claims are typical of the proposed class.  Like the proposed class, Plaintiff purchased Non-Drowsy Equate Products.

*Predominance and Superiority*

36.     The prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards for the parties opposing the class.  For example, individual adjudication would create a risk that breach of the same express warranty is found for some proposed class members, but not others.

37.     Common questions of law and fact predominate over any questions affecting only individual members of the proposed class.  These common legal and factual questions arise from certain central issues which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any particular class member.  For example, a core liability question is common: whether Defendant breached an express warranty by falsely marketing products that cause drowsiness as "Non-Drowsy."

38.     A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

**V.     Claims**

<u>**Count I: Violations of State Consumer Protection Acts**</u>
**(on behalf of Plaintiff and the Consumer Protection Subclass)**

39.     Plaintiff incorporates each and every factual allegation set forth above.

40.     This count is brought on behalf of Plaintiff and the Consumer Protection Subclass for violations of the following state consumer protection statutes:

| State | Statute |
|---|---|
| New York | N.Y. Gen. Bus. Law § 349, and the following. |

| Washington, D.C. | D.C. Code § 28-3901, and the following. |
|---|---|
| Massachusetts | Mass. Gen Laws Ann. Ch. 93A, and the following. |
| Missouri | Mo. Rev. Stat. § 407, and the following. |
| Rhode Island | R.I. Gen. Laws § 6-13.1- 5.2(B), and the following. |
| Vermont | 9 V.S.A. § 2451, and the following. |
| Washington | Wash. Rev. Code § 19.86.010, and the following. |

41.     Each of these statutes is materially similar.  Each broadly prohibits deceptive conduct in connection with the sale of goods to consumers.  No state requires reliance, knowledge or intent.  Instead, it is sufficient that the deceptive conduct is misleading to reasonable consumers and that the conduct proximately caused harm.  *See Allen v. ConAgra Foods, Inc*., 331 F.R.D. 641, 666 (N.D. Cal. 2019) (finding that these states can be grouped into a certifiable subclass). Defendant's conduct violates each statute's prohibitions.

42.     The sale of Non-Drowsy Equate Products is the sale of goods to consumers. Hundreds of thousands (or potentially millions) of consumers purchase these products.

43.     As alleged in detail above, Defendant's misrepresentations were misleading to Plaintiff and to reasonable consumers.

44.     For Mass. Gen Laws Ann. Ch. 93A, Plaintiff mailed a written notice and demand for correction, to Defendant's headquarters, on December 29, 2021.  Upon the expiration of any governing statutory notice period, Plaintiff and the class seek all available injunctive or monetary relief.

45.     Plaintiff and class members were injured as a direct and proximate result of Defendant's conduct, and this conduct was a substantial factor in causing them harm, because (a) they would not have purchased Non-Drowsy Equate Products if they had known that they cause drowsiness, or (b) they overpaid for the products because they are sold at a price premium due to

Defendant's misrepresentations.

**Count II: Violation of New York Gen. Bus. Law § 349**
**(on behalf of Plaintiff and the New York Subclass)**

46.     Plaintiff incorporates each and every factual allegation set forth above.

47.     Plaintiff brings this cause of action individually and for the New York Subclass,

seeking statutory damages available under New York Gen. Bus. Law § 349 (among other relief).

48.     Plaintiff and the Subclass purchased Non-Drowsy Equate Products in New York.

49.     Defendant's false and misleading "Non-Drowsy" claims are consumer-oriented.

Defendant's misrepresentations have a broad impact on consumers at large, i.e., the hundreds of

thousands (or potentially millions) of New Yorkers that purchase these products.  These

transactions recur every day.

50.     Defendant's "Non-Drowsy" misrepresentations were material.  As alleged in

detail above, these "Non-Drowsy" misrepresentations were important to consumers and affected

their choice to purchase Non-Drowsy Equate Products.  And, as alleged in detail above, these

misrepresentations were likely to mislead reasonable consumers.

51.     Defendant's misrepresentations were willful and knowing.  Because Defendant

makes and sells the Non-Drowsy Equate Products, Defendant researched the known and common

side effects of DXM.  This is diligence that large companies like Walmart would do when selling

a drug.  As a result, Defendant knows that DXM causes drowsiness.  Furthermore, Defendant

controls its labeling, knowingly put on the "Non-Drowsy" representations, and knows the plain

meaning of "Non-Drowsy."  Finally, it is standard practice in the industry to test labeling with

consumers, and Defendant's testing would confirm that "Non-Drowsy" is misleading.

52.     Plaintiff and Subclass members were injured as a direct and proximate result of

Defendant's conduct, and this conduct was a substantial factor in causing them harm, because

they did not get what they paid for (cough syrup that was truthfully "Non-Drowsy") and they

overpaid for the products because the products are sold at a price premium due to Defendant's

misrepresentations.

53.     Plaintiff and the Subclass seek statutory damages of $50, treble damages, an

injunction, reasonable attorney fees, and all other available relief.  See N.Y.Gen.Bus.Law § 349

(h).

### Count III: Violation of New York Gen. Bus. Law § 350
### (on behalf of Plaintiff and the New York Subclass)

54.     Plaintiff incorporates each and every factual allegation set forth above.

55.     Plaintiff brings this cause of action individually and for the New York Subclass,

seeking statutory damages available under New York Gen. Bus. Law § 350 (among other relief).

56.     Plaintiff and the Subclass purchased Non-Drowsy Equate Products in New York.

57.     Defendant's false and misleading "Non-Drowsy" claims impacted consumers at

large.  Defendant's misrepresentations have a broad impact on consumers at large, i.e., the

hundreds of thousands (or potentially millions) of New Yorkers that purchase Non-Drowsy

Equate Products.  These transactions recur every day.

58.     Defendant's "Non-Drowsy" claims were deceptive and misleading in a material

way.  As alleged in detail above, these "Non-Drowsy" misrepresentations were important to

consumers and affected their choice to purchase Non-Drowsy Equate Products.  And these

misrepresentations were likely to mislead reasonable consumers.

59.     Plaintiff and the Subclass saw and relied on Defendant's "Non-Drowsy"

misrepresentations.

60.     Defendant's misrepresentations were willful and knowing.  Because Defendant

makes and sells the Non-Drowsy Equate Products, Defendant researched the known and common

side effects of DXM.  This is diligence that large companies like Walmart would do when selling

a drug.  As a result, Defendant knew that DXM causes drowsiness.  Furthermore, Defendant

controls its labeling, knowingly put on the "Non-Drowsy" representations, and knows the plain

meaning of "Non-Drowsy."  Finally, it is standard practice in the industry to test labeling with

consumers, and Defendant's testing would confirm that "Non-Drowsy" is misleading.

61.     Plaintiff and Subclass members were injured as a direct and proximate result of

Defendant's conduct, and this conduct was a substantial factor in causing them harm, because

they did not get what they paid for (cough syrup that was truthfully "Non-Drowsy") and they

overpaid for the products because the products are sold at a price premium due to Defendant's

misrepresentations.

62.     Plaintiff and the Subclass seek statutory damages of $500, treble damages, an

injunction, reasonable attorney fees, and all other available relief.  See N.Y.Gen.Bus.Law § 350-e

(3).

**Count IV: Breach of Express Warranty**
**(on behalf of Plaintiff and a Nationwide Class)**

63.     Plaintiff incorporates by reference each and every factual allegation set forth

above.

64.     Plaintiff brings this count individually and for the Nationwide Class.

65.     Defendant, as the designer, manufacturer, marketer, distributor, supplier, and/or

seller of the Non-Drowsy Equate Products, issued material, written warranties by representing

that the products were "Non-Drowsy."  This was an affirmation of fact about the products (i.e., a

description of the effects of the ingredients) and a promise relating to the goods.

66.     This warranty was part of the basis of the bargain and Plaintiff and members of

the Nationwide Class relied on this warranty.

67.     In fact, the Non-Drowsy Equate Products do not conform to the above-referenced

16

representation because, as alleged in detail above, they cause drowsiness.  Thus, the warranty was breached.

68.     Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's headquarters, on December 29, 2021.

69.     Plaintiff and the Nationwide Class were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Non-Drowsy Equate Products if they had known that the products cause drowsiness, or (b) they overpaid for the products because they are sold at a price premium due to the warranty.

### Count V: Breach of the Magnuson-Moss Warranty Act
**(on behalf of Plaintiff and the Nationwide Class)**

70.     Plaintiff incorporates by reference each and every factual allegation set forth above.

71.     Plaintiff brings this count individually and for the Nationwide Class.

72.     Defendant supplied Non-Drowsy Equate Products to consumers and Non-Drowsy Equate Products are consumer products.

73.     Defendant issued material, written warranties by representing that the products were "Non-Drowsy."  This was an affirmation of fact about the material in the products (i.e., a description of the effects of the ingredients) and a promise relating to the goods.

74.     Defendant represented that the material inside the Non-Drowsy Equate Products (the ingredients) would meet a specified level of performance over a specified period of time. Defendant represented that, when taken at the recommended dosages, the product ingredients would not cause drowsiness and drowsiness is not a side-effect.

75.     This warranty was part of the basis of the bargain and Plaintiff and members of

the Nationwide Class relied on this warranty.

76.     In fact, the Non-Drowsy Equate Products do not conform to the above-referenced representation because, as alleged in detail above, they cause drowsiness.  Thus, the warranty was breached.

77.     Plaintiff provided Defendant with notice of this breach of warranty (including her intent to seek classwide relief), by mailing a notice letter to Defendant's headquarters, on December 29, 2021.

78.     Plaintiff and the Nationwide Class were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Non-Drowsy Equate Products if they had known that the products cause drowsiness, or (b) they overpaid for the products because they are sold at a price premium due to the warranty.

## VI.   Jury Demand.

79.     Plaintiff demands a jury trial on all issues so triable.

## VII.   Prayer for Relief.

80.     Plaintiff seeks the following relief individually and for the proposed class and subclasses:

- An order certifying the asserted claims, or issues raised, as a class action;

- A judgment in favor of Plaintiff and the proposed class;

- Damages, statutory damages (including under N.Y.Gen.Bus.Law § 349 (h) and § 350-e (3)), treble damages, and punitive damages where applicable;

- Restitution;

- Disgorgement, and other just equitable relief;

- Pre- and post-judgment interest;

- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;

- Reasonable attorneys' fees and costs, as allowed by law; and

- Any additional relief that the Court deems reasonable and just.

Dated: January 5, 2022                           Respectfully submitted,

                                                 By: */s/ Jonas B. Jacobson*

                                                 Jonas B. Jacobson (*pro hac vice* forthcoming)
                                                 jonas@dovel.com
                                                 Simon Franzini (*pro hac vice* forthcoming)
                                                 simon@dovel.com
                                                 DOVEL & LUNER, LLP
                                                 201 Santa Monica Blvd., Suite 600
                                                 Santa Monica, California 90401
                                                 Telephone: (310) 656-7066
                                                 Facsimile: (310) 656-7069
                                                 Attorneys for Plaintiff